

**554**

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 3702 | **DATE** | 5/5/2004 |
| **CASE TITLE** | Kara Bismark-Thurbush vs. Metropolitan Life/Disability | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Metlife is entitled to a judgment as a matter of law. Its Rule 56 motion is granted, and this action is dismissed. (48-1)

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | MAY - 6 2004 | |
| | Notified counsel by telephone. | | | date docketed | **61** |
| | Docketing to mail notices. | | | | |
| | Mail AO 450 form. | | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | 5/5/2004 | |
| | | | | date mailed notice | |
| SN | courtroom deputy's initials | | | SN | |
| | | | Date/time received in Central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MAY - 6 2004

KARA BISMARK-THURBUSH,  )
                        )
            Plaintiff,  )
                        )
    v.                  )   No. 01 C 3702
                        )
METROPOLITAN LIFE/DISABILITY  )
INSURANCE COMPANY,      )
                        )
            Defendant.  )

MEMORANDUM OPINION AND ORDER

Kara Bismark-Thurbush ("Bismark-Thurbush") has sued Metropolitan Life Insurance Company ("MetLife")[1] in its capacity as claims fiduciary and insurer for the Long Term Disability Plan ("Plan") established and run by her former employer Deloitte & Touche ("Deloitte"). Although her lawyer has chosen to frame her Complaint in two counts, one claiming breach of contract and the other asserting the intentional infliction of emotional distress, both of those contentions are predicated on the claim that MetLife failed to live up to its obligations under the Employee Retirement Income Security Act ("ERISA," 29 U.S.C. §§1001-1191c[2]) when it made the decision to deny her long term disability benefits.

---

[1] MetLife has recently alerted this Court that up to this point it has been incorrectly identified as Metropolitan Life/Disability Insurance Company.

[2] Citations to ERISA provisions will take the form "Section --," employing the Title 29 numbering and not ERISA's internal numbering.

61

MetLife has moved for summary judgment pursuant to Fed. R. Civ. P. 56 ("Rule 56"), and both parties have (at least nominally) complied with this District Court's LR 56.1.[3] Whether because of their joint realization that the true gravamen of Bismark-Thurbush's lawsuit is really grounded in ERISA or for some other unknown reason, both sides' submissions have focused exclusively on that subject--and the analysis here will properly do the same. Because Bismark-Thurbush has not raised a genuine issue of material fact to suggest that MetLife was arbitrary or capricious when it reviewed her claim and made the decision to deny her benefits, MetLife's motion is granted and this action is dismissed.

## Rule 56 Standard

Every Rule 56 movant bears the burden of establishing the absence of any genuine issue of material fact (Celotex Corp. v. Catrett, (477 U.S. 317, 322-23 (1986)). For that purpose courts consider the evidentiary record in the light most favorable to nonmovants and draw all reasonable inferences in their favor

---

[3] LR 56.1 requires parties to submit evidentiary statements and responses to such statements to highlight which facts are disputed and which facts are agreed upon. This opinion cites to MetLife's LR 56.1 statement as "M. St. ¶--," to Bismark-Thurbush's LR 56.1 statement as "B. St. ¶--" and to their respective responses as "M. Resp. ¶--" and "B. Resp. ¶--." Where either party's LR 56.1 statement is undisputed by the opponent, the opinion includes only a citation to the original statement. "R. --" designates citations to the administrative record provided in MetLife's exhibits.

2

(Lesch v. Crown Cork & Seal Co., 282 F.3d 467, 471 (7th Cir. 2002)). But to avoid summary judgment a nonmovant "must produce more than a scintilla of evidence to support his position" that a genuine issue of material fact exists (Pugh v. City of Attica, 259 F.3d 619, 625 (7th Cir. 2001)) and "must set forth specific facts that demonstrate a genuine issue of triable fact" (id.). Ultimately summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant (Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

What follows is a summary of the facts viewed from the perspective dictated by the just-stated principles. But in this instance the obligation to do so is tempered by substantial limitations created by the extent of Bismark-Thurbush's compliance (or noncompliance) with the strictures of LR 56.1.

### Facts

Bismark-Thurbush worked for Deloitte from August 1996 to December 1999 (M. St. ¶4; B. Resp. ¶4). During that time she was a participant in the Plan (M. St. ¶5). Shortly after leaving Deloitte, Bismark-Thurbush submitted a claim for benefits under the Plan (M. St. ¶11), stating that she had experienced several back injuries and a neck injury. Her claim included a statement from her treating physician Dr. Daniel Hurley in which he diagnosed her with both myofascial pain syndrome and a cervical/thoracic spine disorder and opined that she was probably

3

able to work three days per week for four hours per day for the next three to six months (M. St. ¶¶12-13; R. 175).

As part of MetLife's initial evaluation of Bismark-Thurbush's claim for benefits, a Case Management Specialist reviewed her file and requested the medical records from her treating physicians (M. St. ¶¶14-15). MetLife then enlisted Nurse Consultant Sheila Clerkin ("Clerkin") to review Bismark-Thurbush's record and speak with her about her claim (M. St. ¶¶16-17).

After conducting that review, MetLife informed Bismark-Thurbush in June 2000 that it was denying her request for benefits (M. St. ¶20). That denial both recited the evidence that made up the record and concluded that even though the medical records may have supported Bismark-Thurbush's diagnosis, they did not prevent her from performing sedentary work and thus did not support her "Total Disability" as defined by the Plan (R. 81-83).

MetLife's notice of that denial also informed Bismark-Thurbush that she could appeal the determination and submit additional records as part of that process (id.). Bismark-Thurbush took advantage of her right to appeal, but she did not come forth with any new documentation or other information (M. St. ¶¶21-22).

On appeal a MetLife Procedure Analyst determined that

4

Bismark-Thurbush's medical records should be reviewed by an independent physician and secured the services of Dr. Mark Moyer for that purpose (M. St. ¶¶24-25). Dr. Moyer did not examine or interview Bismark-Thurbush, but he reviewed all the medical records in her file (M. St. ¶27; B. St. ¶2). As a result of his review he provided MetLife with a report outlining the reviewed information and concluding that the medical records did not "document the presence of physical impairments...that would otherwise preclude a return to a sedentary job" (M. St. ¶¶28-29; R. 66-67).

Based on that further review, MetLife issued a reconfirmation of its denial of benefits to Bismark-Thurbush in January 2001 (M. St. ¶31). Its letter traced the review process and explicitly determined (R. 64-65):

> While you were diagnosed with myofascial pain syndrome which may be chronic and require additional treatment in the future, the current medical records did not document the presence of physical impairments that would preclude sedentary work. In the absence of medical/clinical findings that document the presence of limitations or impairments that preclude you from performing each of the material duties of your regular job...we are upholding our prior decision to deny your claim for benefits under the Plan.

In response to that final decision by MetLife, Bismark-Thurbush brought this action pursuant to Section 1132(a)(1)(B).

## ERISA Standard of Review

Under the Plan MetLife is vested explicitly with discretionary authority to review claims submitted by Plan

5

participants (M. St. ¶7):

> Any interpretation or determination made pursuant to such discretionary authority shall be given full force and effect, unless it can be shown that the determination was arbitrary and capricious.

Under that standard this Court examines MetLife's decision only to determine whether the denial of benefits to Bismark-Thurbush was "unreasonable, and not merely incorrect" (<u>Herzberger v. Standard Ins. Co.</u>, 205 F.3d 327, 329 (7th Cir. 2000)). To that end, MetLife's determination cannot be upset unless Bismark-Thurbush can create a reasonable inference that it has not made an informed judgment and articulated a sound explanation for its decision based on a reasonable interpretation of the Plan language and the evidence presented to it (<u>Exbom v. Cent. States S.E. & S.W. Areas Health & Welfare Fund</u>, 900 F.2d 1138, 1142-43 (7th Cir. 1990)).

Application of Rule 56 and ERISA Standards

Under ERISA MetLife was required to give Bismark-Thurbush's request for benefits a full and fair review (Reg. §2560.503-1(h)(1)[4]). That concept means that at each step of the process MetLife had to consider all the evidence before reaching a conclusion and also to apprise Bismark-Thurbush of the evidence on which it was relying so that she would have an adequate opportunity to explore the accuracy and reliability of the

---

[4] This, like all other references to provisions of 29 C.F.R., takes the form "Reg. §--."

evidence and seek review of the resultant decision (Halpin v. W.W. Grainger, Inc., 962 F.2d 685, 689, 694 (7th Cir. 1992)). Here Bismark-Thurbush's claim fails because she has not raised a genuine issue of material fact to dispute MetLife's having lived up to its duty to have given the claim such a full and fair review.[5]

First, MetLife's original denial letter to Bismark-Thurbush was required to use understandable language (i) to give specific reasons for its decision, (ii) to refer to the Plan provisions on which its decision was based, (iii) to describe what other information Bismark-Thurbush would need to submit if she were to prove her claim and indicate why such materials are needed, and (iv) to explain the review procedures available to her (Reg. §2560.503-1(g)(1)(i) to (iv)). MetLife's June 2000 letter to Bismark-Thurbush satisfied all of those requirements (R. 81-83).

---

[5] Bismark-Thurbush's LR 56.1 Response specifically admitted this assertion by MetLife in M. St. ¶31:

> By letter dated January 17, 2001, after a full and fair review of plaintiff's file including the independent report of Dr. Moyer, MetLife upheld its decision to deny plaintiff's claim....

That admission has really taken both (1) MetLife's conduct of a full and fair review and (2) Dr. Moyer's independence (as later discussed) out of the realm of genuinely disputed facts (McGuire v. United Parcel Serv., 152 F.3d 673, 675 (7th Cir. 1998)). Nonetheless, because that seems to be the product of carelessness rather than of a desire to give away the family jewels, this opinion will proceed under the premise that Bismark-Thurbush's attorney wished to admit only MetLife's upholding of its earlier denial decision.

7

It quoted the Plan's definition of "Total Disability" at length, explained what records it used in making its decision, told Bismark-Thurbush about the review procedures available to her and alerted her that she could submit other materials (R. 81-83).

MetLife might have provided more detail as to the exact basis for its denial. For example, it could have mentioned that its decision was primarily based on Clerkin's opinion that the restrictions suggested by Dr. Hurley were not otherwise supported by the medical records (M. St. ¶18). Or perhaps it could have provided more specific guidance as to particular materials that could have helped Bismark-Thurbush's claim, rather than simply telling her that she could submit any additional information as she saw fit (R. 81-83).

But such "might haves" do not alter the legal principle that MetLife was neither required to give "the reasoning behind the reasons" nor compelled to offer Bismark-Thurbush anything more than a blanket request for more information (Militello v. Cent. States, S.E. & S.W. Areas Pension Fund, 360 F.3d 681, 689 (7th Cir. 2004); Donato v. Metro. Life. Ins. Co., 19 F.3d 375, 382 (7th Cir. 1994)). Because MetLife thus met the demands of the regulations that defined what was necessary to allow Bismark-Thurbush to pursue a meaningful review of its determination, it satisfied its full and fair review obligation at that stage of the process (Halpin, 962 F.2d at 690).

Next, to satisfy its full and fair review obligation in announcing its final denial to Bismark-Thurbush, MetLife had to (again in a manner calculated to be understood by her) (1) set forth the specific reasons for the determination, (2) refer to Plan language, (3) inform Bismark-Thurbush of her entitlement to receive all relevant documents and (4) explain her right to bring a claim under ERISA (Reg. §2560.503-1(j)(1) to (4)). MetLife substantially complied with the applicable regulations by directing Bismark-Thurbush back to its June 2000 decision letter and the reasoning and Plan language referred to there, by reciting the medical evidence used to form its decision and by explaining that its determination was based in large part on the opinion of an independent medical consultant (R. 64-65; Halpin, 962 F.2d at 690).

It is entirely understandable, then, that Bismark-Thurbush's main complaint about MetLife's final decision to deny her benefits does not hinge on the quality of the information in its January 2001 letter to her. Instead she focuses on the notion that MetLife's reliance on Dr. Moyer's opinion in making its determination calls into question the soundness of its reasoning and thus also raises doubts about its ultimate decision (see Chalmers v. Quaker Oats Co., 61 F.3d 1340, 1344 (7th Cir. 1995)).

Clearly MetLife's final denial draws heavily on Dr. Moyer's opinion that the medical records did not suggest a physical

9

impairment that would otherwise prevent Bismark-Thurbush from performing a sedentary job (R. 64-67). Such reliance is neither unique or surprising (Exbom, 900 F.2d at 1140). To the contrary, a plan fiduciary's placing stock in the opinion of a well-informed independent expert is often strong evidence of a thorough investigation that completely shields a benefits determination from judicial reversal (Hightshue v. AIG Life Ins. Co., 135 F.3d 1144, 1148 (7th Cir. 1998)).

Bismark-Thurbush's primary contention seems to be that MetLife was not entitled to give credence to Dr. Moyer's opinion because he was neither an appropriate expert nor truly independent. Neither of those objections withstands scrutiny.

Little need be said as to Dr. Moyer's expertise. As the record reveals, he was a board certified physician specializing in internal medicine and infectious disease, and with significant experience in treating pain disorders such as myofascial pain syndrome (M. St. ¶25; M. Am. St. ¶26).

Bismark-Thurbush's questioning of Dr. Moyer's independence occupies far more space (B. St. ¶¶2-24; B. Mem. 2-6, 10-11) and thus requires more discussion here. In a nutshell, Bismark-Thurbush points out that although Dr. Moyer testified at his deposition that his review of her records was conducted pursuant to MetLife's regular contract with Network Medical Review ("NMR"), an independent company with which Dr. Moyer was a

10

salaried employee, in reality the review could not have been pursuant to that contract because of a billing rate discrepancy between the standard fee listed in the NMR contract and the rate actually charged for Dr. Moyer's services in Bismark-Thurbush's case (B. St. ¶¶3-4, 6-8). Bismark-Thurbush has also correctly demonstrated that Dr. Moyer's review of her file could not have been part of an independent consulting agreement between Dr. Moyer and MetLife (a position MetLife took at one point during the course of this litigation), because the contract MetLife produced to explain that relationship was dated nearly a year after Dr. Moyer conducted his review of Bismark-Thurbush's file (B. St. ¶¶13-18).

In those respects, at this point the parties are in agreement that the actual relationship between Dr. Moyer and MetLife at the time he conducted his review of Bismark-Thurbush's file stemmed neither from the basic contract between NMR and MetLife nor from an independent contractor agreement between Dr. Moyer and MetLife directly. Instead the relationship was part of a supplemental agreement for onsite reviews that somehow involved NMR, but for which NMR and MetLife did not have a separate written contract (B. St. ¶¶20-21, 23).

But all of that is really beside the mark. Despite the vague insinuations advanced by Bismark-Thurbush due to the lack of clarity as to the details of Dr. Moyer's arrangement with

11

MetLife at the time he reviewed Bismark-Thurbush's file, there is simply no evidence suggesting that Dr. Moyer's compensation was linked to whether he supported a finding of disability or indicating that MetLife otherwise "jiggered the incentives" for Dr. Moyer such that he would be inclined to skew his reports in its favor (Leipzig v. AIG Life Ins. Co., 362 F.3d 406, 409 (7th Cir. 2004)). In the absence of any arguable inference to that effect, nothing supports an argument that MetLife's reliance on Dr. Moyer's report was impermissible (Militello, 360 F.3d at 690).

Dr. Moyer's report clearly explains both the medical evidence he reviewed in reaching his conclusion and the basis for his opinion that the medical records did not support physical impairments that would prevent Bismark-Thurbush from working at a sedentary job (R. 66-67). One particular point on that score may merit special attention.

Bismark-Thurbush claims that Dr. Moyer's evaluation of her medical records without examining her in person is necessarily inadequate in the context of myofascial pain syndrome--a disease similar to fibromyalgia, with the primary symptom of subjectively-experienced pain (B. St. ¶28; B. Mem. 8; Sarchet v. Chater, 78 F.3d 305, 306-07 (7th Cir. 1996)). That might perhaps have persuasive force if Dr. Moyer had based his opinion on dubious evidence such as stereotypes about myofascial pain

12

syndrome or on no evidence at all (as in <u>Hawkins v. First Union Corp. Long-Term Disability Plan</u>, 326 F.3d 914, 918-19 (7th Cir. 2003) and <u>Hillcock v. Cont'l Cas. Co.</u>, No. 02 C 5126, 2004 WL 434217, at *8 (N.D. Ill. Mar. 2)). But Dr. Moyer explicitly noted that his opinion was grounded in the fact that (diagnosis aside) the medical records made available to him did not document the presence of any physical impairments that would hinder Bismark-Thurbush from performing the duties of a sedentary job (R. 66-67). That determination alone is enough to substantiate his findings and to make MetLife's decision to include his opinion as one ingredient in its evaluation a reasonable one.

All of the discussion to this point has shown conclusively why Bismark-Thurbush's Count I claim, labeled as sounding in breach of contract, fails: MetLife complied fully with its contractual obligations under the Plan. And of course it necessarily follows that such full compliance insulates MetLife from any potential liability on Bismark-Thurbush's Count II claim for intentional infliction of emotional distress, which charges MetLife with an allegedly intentional violation of the Plan.[6]

All of that being so, Bismark-Thurbush is wrong in urging that MetLife ignored Dr. Hurley's opinion that she had some

---

[6] This conclusion is independent of, but is strongly buttressed by, the fact that Bismark-Thurbush has not seen fit to advance any facts in her LR 56.1 statement or to assert any arguments in her memorandum that address the elements of an intentional infliction of emotional distress claim.

13

significant occupational limitations. Instead MetLife merely found that on balance Dr. Hurley's opinion was less persuasive than the opinions of Dr. Moyer and Clerkin (R. 3-4, 64-67, 175). That determination is precisely the kind of judgment call that is best left to MetLife under the arbitrary and capricious standard (Black & Decker Disability Plan v. Nord, 538 U.S. 822, 123 S. Ct. 1965, 1972 (2003); Patterson v. Caterpillar, Inc., 70 F.3d 503, 505-06 (7th Cir. 1995)).

## Conclusion

Because Bismark-Thurbush has not successfully created a reasonable inference (1) that MetLife failed to make an informed decision about her case that was rationally connected to the evidence presented and the text of the Plan or (2) that MetLife did not clearly articulate that decision to her, MetLife has satisfied both its fiduciary duty to Bismark-Thurbush under the Plan and its obligation to justify its decision to this Court according to the deferential arbitrary and capricious standard (Cozzie v. Metro. Life Ins. Co., 140 F.3d 1104, 1107, 1109-10 (7th Cir. 1998)). MetLife is entitled to a judgment as a matter of law. Its Rule 56 motion is granted, and this action is dismissed.

_____
Milton I. Shadur
Senior United States District Judge

Date: May 5, 2004

14